**Robert CROMWELL, et al.,
Plaintiffs–Appellants,**

v.

**EQUICOR–EQUITABLE HCA CORP.,
Defendant–Appellee.**

No. 90–3564.

United States Court of Appeals,
Sixth Circuit.

Argued March 28, 1991.

Decided Sept. 11, 1991.

Gregory V. Mersol (argued and briefed), Michael C. Zellers, Arter & Hadden, Cleveland, Ohio, for Equicor–Equitable HCA Corp.

Jaime Lebovitz, Miller, Stillman & Bartel, Cleveland, Ohio, for Lawrence C. and Brenda Reinke.

Before JONES and SUHRHEINRICH Circuit Judges, and FEIKENS, Senior District Judge.*

## AMENDED OPINION

FEIKENS, Senior District Judge.

This appeal is from the district court's orders dismissing appellants' state law claims as preempted and granting appellee's motion for summary judgment. The issues before us are whether the trial court correctly held that appellants' state law claims are preempted by the Employee Retirement Income Security Act ("ERISA"); whether the trial court correctly held that appellants' breach of contract claim arose under ERISA; and whether the trial court correctly held that appellants lack of standing under ERISA did not retroactively defeat jurisdiction and require that the case be remanded to state court. Because we conclude that the district court's holdings are correct, we AFFIRM.

## BACKGROUND

Lawrence Reinke ("Reinke") was employed by Beckman Industries through July 1985. During his employment, Reinke was a participant in the employee benefit plan for Beckman Industries ("the Beckman plan"). In November 1986, Lawrence Reinke's wife, Brenda, suffered a stroke, requiring the Reinkes to seek home health care for her. Appellants, Robert Cromwell and Heterodox Health Systems, Inc. formerly doing business together as Alternative Home Health Care ("appellants"), are home health care providers. Prior to agreeing to provide care to Mrs. Reinke, appellants contacted Appellee Equicor–Eq-

Sanford J. Berger (briefed), Robert M. Fertel (argued), Berger & Fertel, Cleveland, Ohio, for plaintiffs-appellants.

* The Honorable John Feikens, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

uitable ("Equicor"), the administrator of the Beckman plan, by phone, to verify that the provision of such care to Mrs. Reinke would be covered by the Beckman plan. Allegedly, Equicor did verify this. Based on Equicor's assurance of coverage, appellants agreed to provide home health care to Mrs. Reinke.

Reinke, acting on Mrs. Reinke's behalf, signed an "Assignment of Insurance Benefits" clause authorizing "[p]ayment directly to ... [appellants] of any and all sums of money otherwise payable to me under the terms of the home health provisions of said group policy or contract." Appellants provided care to Mrs. Reinke from January 1, 1987 to June 24, 1987. Equicor paid appellants for care rendered to Mrs. Reinke through April 15, 1987. Equicor consistently denied appellants' claims for payment for services rendered thereafter.

Equicor claims that prior to May 1987, it was unaware that Reinke had terminated his employment with Beckman in 1985, and therefore was no longer entitled to any benefits from the Beckman plan. Upon discovering this, Equicor stopped paying appellants' claims. Equicor did not notify appellants that their services would no longer be covered by the Beckman plan until June 23, 1987, when appellants called to inquire why the claims were being denied. At that time, appellants were allegedly informed that coverage was being denied because of a dispute between Lawrence Reinke and his employer regarding the insurance coverage.

The outstanding balance for the care appellants provided to Mrs. Reinke is $22,-700.08. Equicor, for reasons we do not know, issued a check in that amount directly to the Reinkes to settle all claims they had or might have against the Beckman plan. Equicor did not make the check payable to appellants, claiming it lacked legal authority or obligation to do so.[1]

Appellants filed suit in state court alleging breach of contract, promissory estoppel, negligence and breach of good faith based on their reasonable reliance on Equicor's oral assurances of coverage[2]. Equicor removed the suit to federal court on federal question grounds. The district court found that appellants' complaint stated a cause of action arising under ERISA since the substance of appellants' breach of contract claim was for benefits payable under an employee health insurance plan. In its order of July 14, 1989, the district court dismissed appellants' state law claims as preempted by ERISA. Equicor then moved for summary judgment on the ERISA claim. On April 14, 1990, the district court granted Equicor's motion, concluding that since appellants were neither "participants" nor "beneficiaries" as defined by ERISA, they lacked standing to bring an ERISA claim.

## ANALYSIS

1. Preemption of Appellants' State Law Claims

█ Appellants argue that the district court erred in finding that ERISA preempts their state law claims. According to appellants, because these claims arise under state laws of general application with only a tenuous or peripheral effect on an ERISA plan, they are not preempted by ERISA. We disagree.

█ ERISA preempts state law and state law claims that "relate to" any employee benefit plan as that term is defined therein. 29 U.S.C. § 1144(a). *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The Beckman plan is an ERISA employee benefit plan. The phrase "relate to" is given broad meaning such that a state law cause of action is preempted if "it has connection with or reference to that plan." *Metropolitan Life Ins. Co. v. Mass.,* 471 U.S. 724, 730, 732–33, 105 S.Ct. 2380, 2385–86, 85

---

1. Appellee claims that because the Reinkes had no right to any further benefits under the plan at the time they executed the assignment of benefits clause, no right to payment was conveyed to appellants.

2. Appellants also named Lawrence and Brenda Reinke as defendants in this action. However, neither is a party to this appeal.

L.Ed.2d 728 (1985); *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Such claims are preempted if they "relate to" an ERISA plan whether or not they were so designed or intended. *Daniel v. Eaton Corp.,* 839 F.2d 263 (6th Cir.), *cert. denied,* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988). Nor is it relevant to an analysis of the scope of federal preemption that appellants may be left without remedy. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

■ The United States Supreme Court has held that Congress' intent in enacting ERISA was to completely preempt the area of employee benefit plans and to make regulation of benefit plans solely a federal concern. *Pilot Life,* 481 U.S. at 41, 107 S.Ct. at 1549. *See also Firestone Tire & Rubber Co. v. Neusser,* 810 F.2d 550 (6th Cir.1987). The Court consistently emphasizes the broad scope of preemption under ERISA. *See, e.g., Pilot Life,* 481 U.S. at 41, 107 S.Ct. at 1549; *Metropolitan Life v. Mass.,* 471 U.S. at 730, 105 S.Ct. at 2384; *Shaw,* 463 U.S. at 85, 103 S.Ct. at 2890. Thus, only those state laws and state law claims whose effect on employee benefit plans is merely tenuous, remote or peripheral are not preempted. This circuit, too, has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA. *See, e.g., Ruble v. UNUM Life Ins. Co.,* 913 F.2d 295 (6th Cir.1990); *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689 (6th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990); *McMahan v. New England Mut. Life Ins. Co.,* 888 F.2d 426 (6th Cir.1989); *Firestone Tire & Rubber Co. v. Neusser,* 810 F.2d 550 (6th Cir.1987). It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit. *See, e.g., Scott v. Gulf Oil Corp.,* 754 F.2d 1499 (9th Cir. 1985).

■ Appellants' complaint alleged promissory estoppel, breach of contract, negligent misrepresentation, and breach of good faith as grounds for the recovery of benefits from the Beckman plan for health care services rendered to the Reinkes. Thus, appellants' state law claims are at the very heart of issues within the scope of ERISA's exclusive regulation and, if allowed, would affect the relationship between plan principals by extending coverage beyond the terms of the plan. Clearly, appellants' claims are preempted by ERISA. *See, e.g., Pilot Life,* 481 U.S. at 41, 107 S.Ct. at 1549 (breach of contract and bad faith claims arising out of a failure to provide benefits under the insurance contract are preempted by ERISA); *Daniel v. Eaton Corp.,* 839 F.2d 263 (6th Cir.), *cert. denied,* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988) (state law breach of contract and promissory estoppel claims are preempted by ERISA); *Davis,* 887 F.2d at 689 (equitable estoppel claims are not recognized by ERISA itself and state law estoppel claims are preempted by ERISA); and *Hermann Hosp. v. MEBA Medical & Benefits Plan,* 845 F.2d 1286 (5th Cir.1988) (claims for breach of fiduciary duty, negligence, estoppel, breach of contract and fraud brought by a health care provider were preempted by ERISA). *See also Comprehensive Care Corp. v. Doughtry,* 682 F.Supp. 516 (S.D.Fla.1988) (tort and breach of contract claims arising from alleged misrepresentation of coverage to mother prior to admittance of son to hospital preempted by ERISA); and *Richland Hosp., Inc. v. Ralyon,* 33 Ohio St.3d 87, 516 N.E.2d 1236 (1987) (claim for willful and malicious misrepresentation of benefits preempted).[3]

**3.** As the district court pointed out, appellants agreed to provide health care services to the Reinkes without requiring proof of insurance or other adequate security. Appellants did not ask *to be notified* if coverage lapsed, nor did they investigate what circumstances might cause coverage to lapse or whether there was any limit on coverage. They procured an assignment of benefits without ensuring that it conveyed any right to benefits under the plan. In the absence of any legal duty between appellee, the Beckman plan and appellants, ERISA negates appellants' attempt to make appellee and the plan an after-the-fact insurer of the Reinke's private debt.

## 2. The District Court's Jurisdiction

Appellants present us with two issues relating to the district court's jurisdiction: 1) whether the district court properly granted Equicor's petition for removal; and 2) whether the district court's ultimate determination that appellants lacked standing under ERISA required it to remand the entire case to state court.

### A. *Removal to Federal Court*

■ Appellants argue that removal of their action to federal court was improper because they were not seeking benefits under an ERISA plan but, rather, damages for Equicor's misconduct under general state law. We disagree.

■ A federal district court has removal jurisdiction over any cause of action in a state court complaint that "arises under" federal law, for which it would have had original jurisdiction. 28 U.S.C. § 1441(b). In determining whether a cause of action "arises under" federal law, the court must look to the complaint as it existed at the time the petition for removal was filed to determine whether the position of a plaintiff has any legal substance. *Pullman Co. v. Jenkins*, 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334 (1939). That a complaint ultimately fails to state a claim upon which relief can be granted is of no relevance to the question of subject matter jurisdiction. *Bush v. State Industries, Inc.*, 599 F.2d 780 (6th Cir.1979).

Clearly appellants' position as set forth in the complaint was of legal substance and contained allegations sufficient to give the district court jurisdiction. At the time the petition for removal was filed, appellants' complaint alleged four causes of action: promissory estoppel, breach of contract, negligence and breach of good faith. Examining the allegations of this complaint, appellants did set forth a cause of action

arising under ERISA. Appellants claimed to "stand in the shoes" of Reinke vis-a-vis his contractual relationship with Equicor under the Beckman plan, and sought to recover benefits from the plan by way of the assignment of benefits clause executed by the Reinkes. Two of appellants' four causes of action—those for breach of contract and breach of good faith—were premised exclusively on the assignment of benefits clause. In fact, appellants concede on appeal that they sought relief pursuant to the assignment of benefits clause in counts II and IV of the complaint. Appellants argue however, that since counts I (promissory estoppel)[4] and III (negligent misrepresentation) allege purely state law claims, the district court lacked jurisdiction over them. Contrary to appellants' assertions, once the district court properly concluded that appellants' claim for benefits arose under federal law, it was within its discretion to remove appellants' state law claims as pendent, since the state law claims arose out of the same operative facts as the ERISA claim. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

■ Appellants' complaint also indicated that they had standing to bring the ERISA claim. A health care provider may assert an ERISA claim as a "beneficiary" of an employee benefit plan if it has received a valid assignment of benefits. *Hermann Hospital v. MEBA Medical & Benefits Plan*, 845 F.2d 1286 (5th Cir.1988). Appellants alleged that they received a valid assignment of benefits. If the assignment of benefits did actually convey rights under the plan, appellants clearly would have had standing to sue under ERISA. There was nothing in appellants' complaint indicating that the assignment of benefits was invalid or ineffective. To the contrary, appellants repeatedly relied on the assignment of benefits and their rights "standing in the

---

**4.** It is important to note that at the time of removal of this action this circuit had not yet determined whether estoppel claims were cognizable under ERISA. Thus, at that time, appellants had at least a colorable estoppel claim under ERISA. That such a claim was later foreclosed by this circuit's decision in *Davis v.*

*Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689 (6th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990), is of no consequence in reviewing whether removal was proper, given both the allegations of appellants' complaint and the status of the law at that time.

shoes" of the Reinkes vis-a-vis the health insurance contract.

Appellants alleged that Equicor informed them their claims were being denied because of a dispute between Reinke and his employer regarding coverage. This in no way indicates that the assignment of benefits clause was invalid or ineffective. Nothing in appellants' allegations at the time of the petition for removal could have alerted the district court that standing would even be at issue in the case. Appellants clearly claimed to be entitled to benefits due them from the Beckman plan as beneficiaries by virtue of the assignment of benefits clause. Thus, appellants have alleged standing sufficient to allow removal.

In addition, in *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Supreme Court held that because Congress intended to completely preempt the field of employee benefits by its adoption of ERISA, common law causes of action filed in state courts that are preempted by ERISA and come within the scope of § 502(a)(1)(B) [5], 29 U.S.C. § 1132(a)(1)(B), are removable to federal court under 28 U.S.C. § 1441(b). According to *Metropolitan Life*, Congress so completely preempted this subject area that any complaint raising a claim to benefits under an employee benefit plan is necessarily federal in character. *See also Lister v. Stark*, 890 F.2d 941 (7th Cir.1989). Appellants' complaint was necessarily federal in character. Thus, we conclude that removal of appellants' complaint was proper.

## B. *Lack of Standing and the District Court's Jurisdiction*

■ Appellants argue that even if the district court did have jurisdiction, that jurisdiction was defeated when the court found that appellants lacked standing to sue under ERISA. In *Teagardener v. Republic–Franklin Inc. Pension Plan*, 909 F.2d 947 (6th Cir.1990), this circuit held

that only "participants" or "beneficiaries" of an employee benefit plan have standing to sue. Since the district court ultimately found that appellants were neither "participants" nor "beneficiaries", it held that they lacked standing to sue under ERISA. This holding is not disputed. Instead, appellants argue that once the district court discovered that they were neither "participants" nor "beneficiaries" of an ERISA plan, it was required to remand the action—including the preempted state law claims—to state court so that the case could begin anew. We disagree.

■ It is well settled that jurisdiction is not determined by the outcome of the dispute. That a complaint is ultimately determined not to state a claim upon which relief can be granted does not defeat jurisdiction over the case. *Bush v. State Industries, Inc.*, 599 F.2d 780 (6th Cir.1979). Similarly, plaintiff's failure to recover the jurisdictional amount in a diversity action does not void the judgment for want of subject matter jurisdiction. *See, e.g., Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Here, the district court's determination that appellants lacked standing does not void its earlier determination that appellants' state law claims are preempted.

In addition, to the extent that the district court premised removal on the Supreme Court's holding in *Metropolitan Life v. Taylor*, 481 U.S. at 58, 107 S.Ct. at 1542, that under certain circumstances the defense of preemption is sufficient to allow removal of state law claims seeking benefits from an ERISA plan, the district court's conclusion that appellants' state law claims were in fact preempted was not mooted by its later determination that appellants lacked standing.

## CONCLUSION

We hold that the district court was correct in holding that appellants' state law

---

**5.** This section provides in relevant part: "A civil action may be brought (1) by a participant or beneficiary.... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

claims "relate to an employee benefit plan" and therefore are preempted, that appellants' breach of contract claim set forth an ERISA claim, and that appellants' lack of standing did not retroactively defeat removal jurisdiction and require a remand of the entire action, including the preempted state claims, to state court. The decision of the district court is AFFIRMED.

SUHRHEINRICH, Circuit Judge, concurring.

■ I concur in the result reached in this opinion, but write separately to express my agreement with the dissent's analysis regarding the proper procedure to be employed by the district court once it accepts removal jurisdiction.

The majority approves a procedure whereby the district court, upon removal, dismissed three of the four claims as preempted and later determined as to the fourth issue that plaintiff had no standing in the first place. I believe that the dissent is correct in its determination that Supreme Court and Sixth Circuit precedent clearly require that a district court make an independent inquiry at the outset to determine whether the plaintiff is a "participant" or "beneficiary" within the meaning of ERISA, before it turns to the issue of preemption.

Where I believe the dissent fails, however, is in its analysis of whether appellants' promissory estoppel and negligent misrepresentation claims are preempted. The dissent neglects the third factor articulated by this court in *Firestone Tire & Rubber Co. v. Neusser,* 810 F.2d 550 (6th Cir.1987), i.e., the effect state law has on the plan. *Id.* at 556. I perceive several negative effects. First, a judgment in this type of case, obviously not limited to contractual damages since plaintiff was never a participant or beneficiary, will nonetheless have to be paid by the plan, leaving fewer funds available to pay the claims of beneficiaries. Second, the payment of the award will require actuarial adjustments, since such a judgment will not have been a factor in the plan's projections. Thus, the assessment of such judgments against a plan may reduce the amount available to the plan's beneficiaries and increase administrative costs. Third, the plan will also be subject to the laws of the individual states concerning the types of damages recoverable in tort, including consequential and punitive damages. The danger of inconsistent state laws, with its attendant effect of increasing the administration costs of a plan, is the key concern behind ERISA preemption.

Finally, by not preempting such state law claims, we are allowing parties to do indirectly through tort law what we would prevent them from doing directly through contract law. It is for these reasons then, that I think the state laws at issue here "relate to" the ERISA plan and are therefore preempted.

NATHANIEL R. JONES, Circuit Judge, dissenting.

In affirming the district court in this case, the majority approves a procedure through which a district court may engage in a preemption analysis under ERISA before verifying the basis of its jurisdiction, or even before determining whether the complaint states a claim under ERISA at all. In my view, this procedure is emblematic of what seems to be an overzealous readiness in the federal courts to bar all state-law claims which even smell of ERISA under the broad umbrella of preemption without engaging in the complex case-by-case analysis which the statute and precedent require. As in this case, the result of such a boiler-plate unreflective approach to ERISA preemption is to frequently leave deserving claimants without recourse in state or federal court. It is clear that Congress intended ERISA preemption to be broad in scope. *See Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2388, 85 L.Ed.2d 728 (1985). However, "[s]ome state actions may effect employee benefit plans in too tenuous, remote or peripheral a manner to warrant a finding that [ERISA preemption is applicable]." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490

(1983). It is my view that the proper procedure in this case would have been for the district court, once it accepted removal jurisdiction, to do a thorough analysis of the basis of its jurisdiction, including the standing of the plaintiff to sue under ERISA, *before* engaging in an analysis of the merits of the claims, including preemption. Instead, the district court dismissed three of plaintiff's four claims as preempted by ERISA, and later determined that the plaintiff had no standing to sue under ERISA in the first place. Had the district court engaged in the standard blackletter practice of first addressing jurisdictional issues, it would have recognized that the plaintiff had no standing to sue under ERISA because it was neither a "participant" nor a "beneficiary" of an employee benefits plan. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 957, 103 L.Ed.2d 80 (1989); *Teagardener v. Republic–Franklin Inc. Pension Plan,* 909 F.2d 947, 951–52 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 678, 112 L.Ed.2d 670 (1991). The court would then have properly turned to whether any of plaintiff's claims were sufficiently "related to" the benefits plan to require preemption despite the fact that plaintiff could not claim under the plan. In my view, this procedure would have led the court to a different conclusion than it reached in this case—namely, that none of plaintiff's claims either stated a claim "under the plan" or were sufficiently "related to" the plan to warrant preemption. The proper result would therefore have been to dismiss plaintiffs' breach of contract and good faith claims for lack of standing and to remand the plaintiffs promissory estoppel and negligent misrepresentation claims to state court for adjudication. For these reasons, I respectfully dissent.

## I.

As the majority points out, the plaintiffs originally brought their claims in state court. Pursuant to motion, the defendant removed the case to federal court. Plaintiffs contend that had the district court properly investigated the basis of its jurisdiction after removal, it would have recognized that plaintiffs' complaint did not raise any claims which confer standing to sue under ERISA. Further, without the ERISA claims, the complaint raised no federal question and thus, the court lacked subject matter jurisdiction over the case. Thus, plaintiffs contend the district court should have remanded the case to state court for lack of jurisdiction. With certain qualifications, I agree with the plaintiffs that some of their claims should have been remanded to state court as improvidently removed.

Removal from state to federal court is governed by 28 U.S.C. § 1441(a) which provides:

> any civil action brought in a State court of which the district courts of United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

One basis for removal is the presence of a federal question in the case. *See* 28 U.S.C. § 1331 (granting original jurisdiction to the federal courts for cases "arising under" the laws of the United States). Normally, in determining whether removal of an action is proper, a district court must apply what has come to be known as the "well-pleaded complaint" rule, first articulated in *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). In *Mottley,* the Court held that a trial court must look only to the well-pleaded complaint to determine whether a federal question is raised. *Id.* at 153, 29 S.Ct. at 43. The fact that a federal defense is raised in the answer is insufficient to confer jurisdiction on the federal courts to hear the case. *Franchise Tax Board of the State of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 10–11, 103 S.Ct. 2841, 2846–2847, 77 L.Ed.2d 420 (1983) (citing *Mottley*).

However, in *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the Supreme Court held that the well-pleaded complaint rule did not apply in cases that " 'come within the scope

of § 502(a) [the civil enforcement provision] of ERISA' " and that such cases were proper for removal.[1]   *Id.* at 64, 107 S.Ct. at 1547 (citation omitted).   ERISA's civil enforcement provision provides in relevant part:

> (a) Persons empowered to bring a civil action
>
> A civil action may be brought—
>
> (1) by a participant or beneficiary—
>
> \* \* \* \* \* \*
>
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B) (1988).   The *Taylor* Court reasoned that more lenient removal for certain ERISA cases was required because of Congressional intent to "so completely pre-empt [this] particular area that any civil complaint raising this select group of claims is necessarily federal in character."   *Id.* at 63–64, 107 S.Ct. at 1546–1547.   Thus, to determine whether removal was proper in this case, we must determine whether Cromwell's complaint falls within the scope of § 1132(a)(1).

In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court provided considerable guidance for determining when a plaintiff's complaint states a claim under § 1132(a)(1).   Recognizing that § 1132(a)(1) only allows suits for benefits by either a "participant" or a "beneficiary", the Court rejected the Court of Appeals' determination that a " 'civil action may be brought by *someone who claims to be* a participant or beneficiary.' "   *Id.*, 109 S.Ct. at 957 (emphasis original) (citation omitted).   The Court noted that "[t]o say that a 'participant' is any person who claims to be one begs the question of who is a participant[.]"   *Id.*   The Court then went on to hold:

> In our view, the term "participant" is naturally read to mean either "employees

in, or reasonably expected to be in, currently covered employment," or former employees who "have … a reasonable expectation of returning to covered employment" or who have "a colorable claim" to vested benefits.   In order to establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future….   "A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the [phrase] 'may be eligible.' "

*Id.* at 957–58 (citations omitted).

Thus, *Bruch* makes clear that a district court may not rely a complainant's bare allegations of status as a "participant" or "beneficiary" in order to determine whether a complaint states a cause of action under the civil enforcement provision of ERISA.   Rather, the district court must make an independent inquiry to determine whether the plaintiff falls into the category of either a "participant" or a "beneficiary" within the meaning of ERISA.   If the plaintiff does not qualify under either of these categories, the plaintiff lacks standing to bring an action under § 1132(a)(1) and the complaint must be dismissed.   *Teagardener,* 909 F.2d at 951–52 (citing *Bruch* ).

The majority makes much of the fact that Cromwell alleged in his complaint that, based upon the Reinkes' assignment of benefits, Cromwell "[stood] in the shoes" of the Reinkes and was entitled to any benefits that the Reinkes were entitled to under the plan.   However, as the majority also points out in footnote 1, Equicor refused to pay Cromwell the $22,700.00 balance because, "the Reinkes had no right to any further benefits under the plan at the time they executed the assignment of benefits clause[.]   Maj. op. at 1275.   Thus, there

---

**1.** In *Taylor* the Supreme Court referred to internal numbering of the provisions of ERISA rather than to the section number of the provisions under Title 29.   For clarity and ease of refer-

ence, I will refer to the numbering under Title 29.   In the instant circumstance, § 502(a) corresponds to 29 U.S.C. § 1132(a).

was no secret at the pleading stage that Equicor's defense to the contract claims was that Cromwell was neither a participant nor a beneficiary under ERISA because the Reinkes had no benefits to assign. In other words, regardless of whether Cromwell claimed to "stand in the shoes" of the Reinkes or not, he was never a beneficiary under the plan as a matter of law because he did not receive any valid assignment of benefits from a qualified plan participant. Thus, as regards Cromwell's breach of contract and breach of good faith claims, a cursory examination of the pleadings in this case, as required by *Bruch*, would have revealed that there was simply no basis on which to find that Cromwell had standing under ERISA as either a participant or a beneficiary. Consequently, these claims should have been dismissed.

However, the majority finds that the fact that the court ultimately determined that Cromwell was neither a "participant" nor a "beneficiary" under the plan at the summary judgement stage did not deprive the court of its original jurisdiction over the case. As suggested above, the majority misses the point. Recently, in *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), the Supreme Court reiterated the fundamental jurisdictional character of the requirement of standing. As the court put it, "The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" *Id.*, 110 S.Ct. at 607. As *Teagardener* makes clear, the plaintiffs' mere assertions in the pleadings that they qualify as a "participant" or "beneficiary" for the purposes of § 1132(a)(1) is insufficient to confer standing. 909 F.2d at 952. Thus, after removal, the court was obligated as a *preliminary matter* to scrutinize the pleadings to determine whether there was an adequate basis for its jurisdiction, and whether removal was providently granted.

Contrary to the majority's assertion, this case is not analogous to a case in which an otherwise sufficient complaint results in an award which is less than the required jurisdictional amount. Rather, it should have been clear from the pleadings that the Cromwell did not state a claim under ERISA at all. Thus, the proper analogy is one in which the court may not take a plaintiff's bare allegation of jurisdictional sufficiency on face value, but must inquire into whether the complaint actually raises a federal question.[2] Accordingly, Cromwell's complaint notwithstanding, Cromwell could not, as a matter of law, claim rights either as a "participant" or a "beneficiary" of an employee benefits plan.

However, under the Supreme Court's holding in *Taylor*, the fact that a plaintiff does not sufficiently allege any claims under the civil enforcement provisions of ERISA does not end the inquiry. The district court may still have had jurisdiction over the claim if the defendants properly raised ERISA preemption as a defense to plaintiff's state-law claims. *Taylor*, 481 U.S. at 63–67, 107 S.Ct. at 1546–1548. As to this point, I will concede that unlike the breach of contract and good faith claims which on their face do not state a claim under ERISA as a matter of law, the court must engage in a thorough preemption analysis in order to determine the merits of Equicor's preemption defense to the promissory estoppel and negligent misrepresentation claims. Therefore, it would seem that the district court properly had jurisdiction to decide the issue of preemption as to these claims. However, as I shall demonstrate, these claims did not sufficiently "relate to" the benefits plan such that they were properly the subject of ERISA preemption.

## II.

In its section on preemption, the majority asserts, without analysis, that "appellants' state law claims are at the very heart of issues within the scope of ERISA's exclu-

---

**2.** *See, e.g. Enriquez v. Enriquez,* 222 U.S. 123, 32 S.Ct. 62, 56 L.Ed. 122 (1911) (court may not rely on plaintiff's bare allegations of jurisdictional amount or upon conjecture as to whether that amount will be met, but rather, must closely examine the complaint to ensure that the jurisdictional amount is in fact properly alleged and supported by the relevant facts).

sive regulation and, if allowed, would affect the relationship between plan principals by extending coverage beyond the terms of the plan. Clearly, appellants' claims are preempted by ERISA." Maj. op. at 1276. I have already addressed the plaintiffs' contract-based claims, and, with respect to the plaintiffs' claims of promissory estoppel and negligent misrepresentation, I respectfully disagree with the majority.

By its terms, ERISA preempts all state law causes of action which "relate to any employee benefit plan". 29 U.S.C. § 1144(a); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). "The phrase 'relate to' [has been] given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. at 739, 105 S.Ct. at 2389 (quoting *Shaw*, 463 U.S. at 97, 103 S.Ct. at 2900). However, despite the broad scope of ERISA preemption, it is not without limitation. In *Shaw*, the Supreme Court indicated that "[s]ome state actions may effect employee benefit plans in too tenuous, remote or peripheral a manner to warrant a finding that the law 'relates to' the plan." 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.

In *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550, 555–56 (6th Cir.1987), this court articulated three factors which should be considered to determine whether a state law cause of action "falls within the 'remote and peripheral' exception" to ERISA's broad preemption. *Id.* at 555. The first of these factors is to examine whether "the state law represents a traditional exercise of state authority." *Id.* The second criterion is to see whether state law " 'affects relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries'." *Id.* at 556 (quoting *Sommers Drug Stores Co. v. Corrigan Enterprises*, 793 F.2d 1456, 1467 (5th Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987)). The third factor to consider is the effects of the state law on the plan. *Id.* See, also *Perry v. P\*I\*E Nationwide, Inc.*, 872 F.2d 157, 161–62 (6th Cir.1989), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990) (employing the *Neusser* factors without referencing *Neusser*, and adding the additional consideration of whether ERISA provides a remedy for the wrong alleged in the state action).

With these complex factors in mind, we must turn to the specific claims and facts before the court in order to determine whether *in this case* preemption applies.[3] The circumstances before the court involve a third-party health care provider who relies upon a plan administrator's representations that an insured is covered by the plan. Later, when the plan administrator discovers its mistake—that the "insured" is not insured—it denies benefits. Hence, a claim of promissory estoppel raised by a third-party health care provider is asserted precisely because that provider *is not* entitled to benefits under the plan.

This precise question was addressed in *Memorial Hosp. System v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir.1990). In *Memorial Hospital*, a health care provider sued the administrators of a health insurance plan alleging that the plan administrators misrepresented the insured's coverage under the plan. The scenario was identical to the case before us in that prior to providing health care to a patient, the health provider verified coverage with the plan administrators. However, later upon demand for payment, the administrators refused to pay claiming that the patient

---

**3.** The majority's authority for its finding of preemption in this case is primarily a string cite of Sixth Circuit precedent prefaced by the following sentence: "This circuit, too, has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA." Maj. op. at 1276. It might well be true that the cases cited support the proposition stated—that "claims relating to an employee benefits plan are preempted." The fallacy of the majority's argument is that the precise question before the court is the one the majority assumes away—whether or not the claims before it in this case relate to an employee benefits plan.

was not covered under the plan. The plaintiffs brought the action in state court, the defendants removed to federal court and then filed a motion to dismiss claiming ERISA preemption.

The court analyzed the case applying two criteria: "(1) [whether] the state law claims address an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) [whether] the claims directly affect the relationship between traditional ERISA entities[.]"[4] *Id.* at 245. First, as to the question of whether the claims affected rights under the terms of the plan, the court stated:

> If a patient is not covered under an insurance policy, despite the insurance company's assurances to the contrary, a provider's subsequent civil recovery against the insurer in no way expands the rights of the patient to receive benefits under the terms of the health care plan. If the patient is not covered under the plan, he or she is individually obligated to pay for the medical services received. The only question is whether the risk of nonpayment should remain with the provider or be shifted to the insurance company, which through its agents misrepresented to the provider the patient's coverage under the plan. *A provider's state law action under these circumstances would not arise due to the patient's coverage under an ERISA plan, but precisely because there is no ERISA plan coverage.*

*Id.* at 246 (emphasis added). Further, the court noted that allowing preemption in these circumstances would discourage health care providers from providing health care to patients through assignment of benefits. This, in turn, would itself " 'undermine Congress' goal of enhancing employees' health and welfare benefit coverage.' " *Id.* at 247 (citation omitted).

Second, with respect to whether actions by health providers involved relations between "traditional ERISA entities," the

Fifth Circuit noted that the Supreme Court has recognized two types of civil actions under ERISA. *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). The first type involves actions under ERISA's civil enforcement provision, § 1132(a). *Id.* 108 S.Ct. at 2186–87. The second type includes

> "lawsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan," all involve claims brought by non-ERISA entities. [*Mackey,* ] 108 S.Ct. at 2187 & n. 8. "[A]lthough obviously affecting and involving ERISA plans and their trustees," this second type of lawsuit is not preempted. *Id.*

*Memorial Hosp.,* 904 F.2d at 248. Since the suit before it involved an action between a non-ERISA entity—the provider—and the plan, essentially for services rendered based upon representations by the plan, the court determined that the provider's state-law action should not be preempted. *Id.* at 249–50. I believe that the Fifth Circuit's analysis in *Memorial Hospital* is correct, and I would follow it to find no preemption of Cromwell's promissory estoppel and negligent misrepresentation claims.

This court's decision in *Perry* is also instructive for determining whether the claims in this case "relate to" the plan for preemption purposes. In *Perry,* this court held that the plaintiffs' claims for promissory estoppel and negligent misrepresentation were not preempted in the situation where plaintiffs alleged they were fraudulently induced to join a benefits plan. 872 F.2d at 162. The court reasoned that the plaintiffs' claims for fraud, misrepresentation and promissory estoppel arose independent of the plan, that the plaintiffs did not seek benefits under the plan and that preemption would be inappropriate where Congress has not provided a remedy for the

---

**4.** While these two criteria are not identical to the criteria applied in this circuit described supra., the analysis is nevertheless valid as it addresses the same questions of whether the claim seeks benefits under the plan and whether allowing benefits would be disruptive of the administration of the plan.

wrong alleged. *Id.* In the instant case, Equicor allegedly induced Cromwell to provide benefits to the Reinkes by representing that the Reinkes were plan participants when they were not. Thus, in both cases, the alleged deceit took place when the plaintiffs were neither participants nor beneficiaries to the plan and involved alleged misrepresentations made giving rise to duties independent of the plan. Thus, as described above, the plaintiffs are not claiming benefits under the plan, but rather claiming that acts by the plan administrators resulted in obligations independent of the plan. Thus, as in *Perry,* preemption in this case would be inappropriate.

Among its cited authority, the majority suggests that our decision in *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689 (6th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1924, 109 L.Ed.2d 288 (1990), is dispositive of the preemption issue. However, *Davis* is distinguishable from the case before us. In *Davis,* the plaintiff sought to obtain death benefits as a beneficiary of her father's ERISA plan. One of her claims was that the plan should be equitably estopped from denying benefits due to allegedly egregious ambiguity in certain provisions of the plan. *Id.* at 695–96. The court held that a *beneficiary* seeking to enforce his or her rights *under an ERISA plan* may not seek "extracontractual damages." *Id.* at 696 (citing *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). However, unlike the plaintiff in *Davis,* Cromwell is not seeking to claim damages under ERISA or under the plan. Rather, Cromwell, which is neither a participant nor a beneficiary, claims that Equicor's representations gave rise to duties outside the plan. As the court in *Memorial Hospital* so aptly put the situation: "A provider's state law action under these circumstances [does] not arise due to the patient's coverage under an ERISA plan, but precisely because there is no ERISA plan coverage." 904 F.2d at 246. Thus, *Davis* is not controlling here.

Similarly, the majority's citation of the Fifth Circuit's decision in *Hermann Hospi-* *tal v. MEBA Medical & Benefits Plan,* 845 F.2d 1286 (5th Cir.1988) is not dispositive of the preemption question. Like *Davis,* the circumstances of *Hermann Hospital* distinguish it from the case before us. In *Hermann Hospital,* the court held that the hospital had standing to sue under an assignment of rights from a patient who was a plan participant. *Id.* at 1290. However, the facts of the case indicate the hospital was aggrieved over the plan's delay in processing its derivative claims. Thus, there was no dispute as to the fact that the hospital sought to claim as a beneficiary under the plan. In light of the fact that the hospital sought to claim benefits under the plan as a derivative beneficiary without being subject to the strictures of ERISA, the court concluded that the hospital's state-law claims were preempted. *Id.* However, much like *Davis,* the court found preemption based upon the fact that the plaintiff sought benefits under the terms of the plan. *Cf. Memorial Hospital,* 904 F.2d at 249 n. 20 (distinguishing *Hermann Hospital* from the facts before it and finding that a health care provider's claims outside an ERISA plan are not preempted). As discussed above, Cromwell seeks to recover fees for services independent of any coverage under the plan. Thus, *Hermann Hospital* also does not require a finding of preemption in this case.

The majority cites numerous other authorities for its finding of preemption, however, all suffer from similar defects in that they involve claims of benefits under an ERISA plan. In sum then, I would find that under the Supreme Court's holding in *Mackey,* this court's analysis in *Perry* and the Fifth Circuit's analysis in *Memorial Hospital,* Cromwell's claims (Counts I and III), which are based upon the creation of an alleged quasi-contractual obligation between Cromwell and Equicor as a result of Equicor's representations outside the plan, should not be preempted.

Returning to the question of the court's jurisdiction over this case, careful analysis of the plaintiffs' claims suggest that the plaintiffs neither state a claim under ERISA—thereby giving rise to original jurisdiction—nor is there merit to Equicor's

defense of ERISA preemption—because defendant's promissory estoppel and negligent representation claims are not preempted. Since the plaintiffs do not state a claim under ERISA and no federal question is raised by virtue of defendant's preemption defense under *Taylor,* the court's subject matter jurisdiction is at an end. The proper course for the district court would be to remand the promissory estoppel and misrepresentation claims to state court. *See* 28 U.S.C. § 1447(c) (upon motion, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."; *cf. McKay v. Boyd Construction Co.,* 769 F.2d 1084 (5th Cir.1985) (once the district court determines that it does not have jurisdiction over a case because barred by the Eleventh Amendment, the proper course is to remand to state court because original removal was improvident); *see, also Klank v. Sears, Roebuck & Co.,* 735 F.Supp. 260, 261–63 (N.D.Ill. 1990) (finding removal only proper under *Taylor* when plaintiff's suit comes "within the scope" of § 1132(a)(1)(B)).

### III.

Admittedly, the analysis I have laid out is complex. However, I believe it is mandated by law to ensure that valid claims by deserving parties are not summarily dismissed with broad strokes by essentially presuming preemption of any claim vaguely connected to an employee benefits plan. As the court in *Mem. Hosp.* points out, the purpose of ERISA was to " '[enhance] employees' health and welfare benefit coverage.' " 904 F.2d at 247 (citation omitted). Congress sought to accomplish this goal, in part by creating consistent federal standards for the administration of benefits plans through the enactment of ERISA.

However, it cannot have been the intention of Congress, in the guise of uniformity, to have created a system through which plans and their administrators are immunized from any and all state-law claims however tenuously related to the plan itself. *See Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21 (ERISA preemption is not without limitation).

It seems to me that the courts have become consumed in a fervor of preemption, sometimes avoiding admittedly difficult and complex analysis, by simply presuming preemption to apply. The problematic nature of such a practice is exemplified in the case at bar. The plaintiffs in this case, good-faith health care providers who provided care in reliance upon a plan's verification of benefits, cannot seek a remedy in either state or federal court. *See Perry,* 872 F.2d at 161–62 (recognizing that whether or not a plaintiff would be deprived of any remedy was a relevant factor to consider in determining preemption).[5] The majority has found all of the plaintiffs' state-law claims to be preempted and found that it has no standing to sue under ERISA. Thus, perhaps inadvertently the majority has enabled plan administrators, either intentionally or not, to give misinformation of coverage and avoid any inquiry into the validity of a health care provider's claims against them. As I believe a proper analysis of this case requires the district court to remand plaintiffs' promissory estoppel and misrepresentation claims to state court, I dissent.

---

**5.** The majority cites *Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), for the proposition that it is not "relevant to an analysis of the scope of federal preemption that appellants may be left without a remedy." Maj.Op. at 1276. However, contrary to the majority's assertion, this case says nothing at all about whether the deprivation of a remedy may be taken into account in determining Congressional intent to preempt a particular state-law cause of action.